PRESIDENT, DIRECTORS, &c. OF THE MIDDLESEX BANK
*vs.* WILLIAM MINOT, Administrator.

A bank made a loan and took a pledge of the borrower's shares in its stock, as collateral security, with a power of sale if payment should not be made according to the terms of the loan : After the borrower's decease, the bank sold the shares at auction, for non-payment, became the purchaser, gave credit for the amount of the sale, and claimed the balance of the borrower's administrator, who refused to sanction the proceeding. *Held,* that nothing passed to the bank by this form of sale, but that it still held the shares, under its original title, as collateral security.

Where a creditor of a deceased insolvent debtor holds property which was pledged to him by the debtor as collateral security, with a power of sale, his claims against the deceased cannot be allowed, unless the property is first sold, and the proceeds deducted, or its value is ascertained, by a jury or otherwise, and that value deducted ; and the balance only, as thus found, is to be allowed against the deceased's estate.

THIS was an appeal, under the Rev. Sts. *c.* 68, § 8, from a decision of the commissioners of insolvency, appointed to receive and examine the claims of creditors against the estate of John K. Simpson, deceased, disallowing the claim of the plaintiffs against said estate, of which the defendant was administra-

Middlesex Bank *v.* Minot, Administrator.

tor.   The parties submitted the case to the court on the follow-
ing agreed statement :

"The claim of the plaintiffs, which was presented to said
commissioners and by them disallowed, was thus :

" Estate of John K. Simpson to Middlesex Bank                                    **Dr.**
To amount of note which was secured by pledge of Middlesex Bank

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| stock, | . | . | . | . | . | . | . | 3·500 |
| To do. | . | . | . | do. | . | . | | 2·400 |
| To do. | . | . | . | do. | . | . | . | 1·300 |

                                                  7·200

Interest on said 7·200 from Oct. 1, 1837, to Aug. 21, 1839, 1 year, 10

    months, 20 days   .   .   .   .   .   .   .   816
Amount of memorandum check   .   .   .   .   .   187·83
Interest on 187·83 from April 19, 1836, to Aug. 21, 1839, 3 years, 4

    months, 2 days   .   .   .   .   .   .   .   37·63

                                                 $ 8·241·46

                           Contra.  Cr.
1838. May 9th.   Proceeds of 72 shares of Middlesex Bank stock sold

    by Stephen Brown   .   .   .   .   .   144·00
Interest on said sum 1 year, 3 months, and 12 days, .   .   11·08   155 08

Balance claimed by the bank, .   .   .   .   .   .   $ 8·086·38

"The debit side of the account is correct.   The said Simp-
son died at Boston in December 1837.   The Middlesex Bank
stopped payment on the 17th of January 1838.   The said
Simpson, at the time of the loan to him on his notes referred
to in said account, by an agreement, signed by him, pledged to
the bank one share in the capital stock of the bank for every
hundred dollars lent, amounting to 72 shares in the whole, as
collateral security for the loan.   A copy of said agreement is in
the margin.*   On the 6th of April 1838, the administrator of

---

* Be it known that I the subscriber, for and in consideration of the sum of
twenty-four hundred dollars, this day loaned on my obligation, by the Middle-
sex Bank, have pledged, and do hereby pledge unto the President, Directors
and Company of said bank, twenty-four shares in the capital stock of the said
bank, with full power to retain the same, as collateral security, on the following
conditions, viz : That for the punctual payment of this or any other sum
which I have obtained or may hereafter obtain, on loan or discount from said
bank, or any liability as indorser, this stock is hereby pledged and made liable,
and the directors of said bank are hereby authorized, after said loan or loans shall

said deceased's estate received due notice, by letter put into his hands, that unless the said notes were paid within thirty days, the shares thus pledged as collateral security would be sold at public auction, and the estate of the said deceased be held to pay the balance remaining unpaid after crediting the proceeds. Said notes not being paid within the thirty days, said shares were placed in the hands of Stephen Brown of Boston, auctioneer, who, after advertising them for sale, the usual time, in three or more of the newspapers printed at Boston, sold said shares at auction on the 9th day of May 1838. The said shares were purchased by the president of the bank, he being the highest bidder, for the benefit of the bank. Said administrator had due notice of the time and place of said sale, but never gave his consent to the sale ; nor did he make known his dissent to said sale, until the time when the bank presented its claim, for allowance, before the commissioners of insolvency on the estate of said deceased ; nor had he notice that the sale had been made. The value of said shares was not known at the time of said sale, but they have turned out to be worth something more than they sold for at said sale. Said shares are still held by the officers of the bank, in trust for the bank."

The parties agreed that if the plaintiffs were entitled to recover, they should have judgment for such sum as the court should direct ; otherwise, that a nonsuit should be entered.

*Buttrick*, for the plaintiffs. The plaintiffs had a power from the intestate to sell the bank shares. This power was coupled with an interest, and could not be revoked, except by payment of the loan. *Hunt* v. *Rousmanier*, 8 Wheat. 203. There is no suggestion of any actual fraud in the sale ; but it may be

---

have become due and payable, and shall remain unpaid, to sell, as soon as the same can be legally done, the said stock, or any part thereof, either at public or private sale, and after deducting the amount due the bank, to place the balance, if any, to my credit on their books, subject to my order : *Provided*, that after the full payment of said loan or loans, the said president, directors and company shall, on demand, redeliver the said stock, if not sold for the causes aforesaid.

John K. Simpson

April 25, 1833.

objected, that the sale was fraudulent in law, as the bank, being trustee of the shares, could not become the purchaser thereof. This objection rests on a principle of chancery, which is applied in the prevention of fraud, in the case of trustees, *eo nomine*, executors, &c. but is not applicable to the present case, which is, substantially, that of mortgagor and mortgagee. *Haynes* v. *Wells*, 6 Pick. 464. *Harrington* v. *Brown*, 5 Pick. 521. *Webb* v. *Rorke*, 2 Scho. & Lef. 673. A purchase of the trust property by the trustee is not void, but voidable only ; *Campbell* v. *Walker*, 5 Ves. 678 ; 5 Pick. *ubi sup.* ; and if the *cestui que trust* acquiesce in the sale, he is bound thereby ; and if he would avoid it, he must dissent in a reasonable time. *Jenison* v. *Hapgood*, 7 Pick. 8. The dissent, in this case, was not manifested for more than two years after the sale ; which was not in reasonable time.

The plaintiffs were not bound to take the shares at an appraisement, but had a right to have their value ascertained by a sale ; and it was the duty of the defendant to consent to such sale. By refusing to agree to a sale, he let in the plaintiffs to prove their whole claim. *Amory* v. *Francis*, 16 Mass. 313. The memorandum check, at least, and interest thereon, should have been allowed by the commissioners, as the principle relied on by the defendant does not apply to that claim.

*W. Minot, Jr.* for the defendant. The plaintiffs were pawnees or trustees of the shares, and their being at the same time the vendors and vendees thereof rendered the sale fraudulent in law, and void. 1 Story on Eq. §§ 321 *& seq.* Story on Bailments, § 319. *Hatch* v. *Hatch*, 9 Ves. 292. Newland on Contracts, *c.* 32. *Farnam* v. *Brooks*, 9 Pick. 212. Jeremy on Eq. Jurisd. 142, 143.

Where one, who stands in a fiduciary relation, makes a profit out of any transaction within the scope of his authority, that profit belongs to his *cestui que trust*. The plaintiffs stood in this relation to the defendant. *Stevens* v. *Bell*, 6 Mass. 343. The fact that the shares have risen in value, in the plaintiffs' hands, since the sale, is of itself sufficient ground to set the sale aside. 2 Story on Eq. §§ 1261 – 1265.

But it is not necessary, in order to show that the sale of the shares was void, to show that the plaintiffs had made a profit thereby. Under the circumstances, the sale was of itself void. *Davoue* v. *Fanning*, 2 Johns. Ch. 260. *York Buildings* v. *Mackenzie*, 8 Bro. P. C. (2d ed.) 42. *Holt* v. *Holt*, 1 Chan. Cas. 190. *Ayliffe* v. *Murray;* 2 Atk. 59. *Whelpdale* v. *Cookson*, 1 Ves. sen. 9. *Randall* v. *Errington*, 10 Ves. 423. Long on Sales, (Rand's ed.) 434 – 436. *Gordon* v. *Finlay*, 3 Hawks, 239.

The decision of the commissioners, disallowing the plaintiffs' claim, was therefore correct ; and it ought not to be allowed, until the security held by them is sold lawfully, and a fair balance struck after deducting the proceeds of such sale.

By the Court. The plaintiffs had full authority to sell the bank shares which were pledged to them, and their sale to a third person would have passed the property. But they could not be the purchasers. Nothing, therefore, passed by the form of a sale at auction, in which they purchased in the shares ; and they still hold the same under their original title, as collateral se curity for their debt. The shares must either be actually sold, and the proceeds be deducted, or their value, ascertained by a jury or otherwise, must first be deducted from the plaintiffs' claim, as stated, and they will then be entitled to the balance only of that claim.

[After this opinion was given, the parties agreed upon the value of the shares, and that the plaintiffs should have judgment against the defendant for $ 5664·24, without costs.]